UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 11-50054-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| SCOTT THOMPSON, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Defendant Scott Thompson filed a motion *in limine* relating to a "withdrawn guilty plea, including the Plea Agreement, Factual Basis Statement, plea colloquy, statements made [by Mr. Thompson] in the course of the preparation of the Presentence Report and any other evidence referencing the guilty plea." (Docket 126). The government does not oppose defendant's motion, unless Mr. Thompson testifies at trial inconsistent with the statements made during the plea hearing. (Docket 130). In that event, the government will seek to impeach Mr. Thompson's trial testimony. Id. at p. 1. For the reasons stated below, the defendant's motion *in limine* is granted.

**DISCUSSION**

On February 24, 2012, Mr. Thompson entered into a plea agreement with the government to plead guilty to count II of the indictment. (Docket 42 at p. 2 ¶ C). Count II of the indictment charged:

> On or about June 23, 2009, at Rapid City, in the District of South Dakota, the defendant, Scott Thompson, made and presented a claim, in a matter within the jurisdiction of a department or agency of the United States, namely, upon the National Science Foundation, that is that after the grant was approved, in the initial request for funding from the National Science Foundation through the Small Business Innovative Research and Small Business Technology Transfer Programs, Scott Thompson claimed Jing Li was employed as the Principal Investigator, that Jing Li's primary employment was with Isosceles LLC and he would continue to conduct the research proposed in the Initial Proposal to the National Science Foundation and that he was available at that time to perform the proposed work, knowing those claims were false in that Jing Li was not an employee of Isosceles LLC, could not continue working on the research and was not available to perform the proposed work, all in violation of 18 U.S.C. § 287.

(Docket 1 at p. 2.).

On March 1, 2012, the court conducted a change of plea hearing. (Docket 45). At the hearing, the court accepted Mr. Thompson's guilty plea to count II of the indictment. (Docket 107 at pp. 30:22-31:7). On June 15, 2012, Mr. Thompson filed a motion to withdraw his guilty plea. (Docket 50). "[Mr. Thompson] wishes to withdraw his plea to knowingly making a false statement in the June 23, 2009[,] Request since on that date, he believed Li would be so employed in the immediate future by the Award date, and that the statement in the Request was therefore true." Id. at p. 3 ¶ 4. On June

15, 2012, the court held a hearing on Mr. Thompson's motion to withdraw the guilty plea. The court orally granted defendant's motion to withdraw his guilty plea. (Docket 106 at p. 18:14-15). A written order granting the motion to withdraw guilty plea was filed that same day. (Docket 56).

Mr. Thompson argues his guilty plea was an "unknowing" plea and any testimony regarding his plea of guilty to count II must be excluded at trial. (Docket 127 at pp. 3-17). At the time Mr. Thompson withdrew his guilty plea, the court did not expressly make a finding Mr. Thompson's guilty plea was an "unknowing" plea. That is the focus of defendant's motion *in limine*.

"To be valid, a guilty plea must represent 'a voluntary and intelligent choice among the alternative courses of action open to the defendant,' and the defendant must 'possess[] an understanding of the law in relation to the facts.' " Wilkins v. Bowersox, 145 F.3d 1006, 1015 (8th Cir. 1998) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970) and McCarthy v. United States, 394 U.S. 459, 466 (1969)). "A defendant must enter into a plea agreement and waiver knowingly and voluntarily for these agreements to be valid." United States v. Andis, 333 F.3d 886, 890 (8th Cir. 2003). "There are many ways in which a . . . [plea] agreement, or aspects of an agreement, could be entered into without the requisite knowledge or voluntariness." Id.

3

The Federal Rules of Criminal Procedure permit a defendant to withdraw a plea of guilty after the court accepts the plea but before sentencing if the defendant can show "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  Evidence of a guilty plea which is subsequently withdrawn and any statement made in the course of any plea proceedings are not generally admissible against the defendant who made the plea.  See Fed. R. Evid. 410(a)(1).  One exception to this general rule permits a defendant's statement to be admissible "in a criminal proceeding for perjury or false statement, if the defendant made the statement under oath, on the record, and with counsel present."  Rule 410(b)(2).  "Under Rule 410, statements made in the course of plea negotiations are inadmissible against the defendant.  This right of the defendant, however, is waivable by agreement, unless there is 'some affirmative indication that the agreement was entered into unknowingly or involuntarily.' " United States v. Quiroga, 554 F.3d 1150, 1154 (8th Cir. 2009) (citing United States v. Young, 223 F.3d 905, 909-10 (8th Cir. 2000) (quoting United States v. Mezzanatto, 513 U.S. 196, 210 (1995)).

At the change of plea hearing, Mr. Thompson and his attorney engaged in the following colloquy with the court about the factual basis statement supporting count II.

    THE COURT:     There's no doubt you made a false claim?

[Mr. Thompson]: It was not intentional, but I made one.

THE COURT: Is the claim you made to the National Science Foundation material to their decision as to whether or not you get the grant money?

[Mr. Thompson]: It was required under the initial requirement for funding. And I told them to go to work, but I didn't do all of the stuff I was supposed to before I told them to go to work. I don't see anything that's not accurate in here. . . .

THE COURT: The count of the indictment requires that with regard to Jing Li's employment with Isosceles LLC and that Li would continue working to conduct research on the proposal, and that he was available to do the work, that you knowing-- you knew those claims were false in that Li was not an employee of Isosceles LLC and could not continue working. This isn't an accidental claim, this is a false claim. The reason it's a federal felony is it has to be a knowing false claim.

[Mr. Thompson]: I don't know how to say it. I can explain it and you can help me, maybe.

. . .

MR. ELLISON: The initial request for payment literally stated that Jing Li was an employee of Isosceles as the principal investigator. That's very a important position to be granting the grant without a PI; without this primary investigator, they would not get the grant. So while Mr. Thompson expected and had good reason to expect that Jing Li was going to be in that position, he was not in that position. He had not been hired as an employee by Isosceles on the date that that initial request was made. And so while Mr. Thompson expected that that was going to happen, it was not true on the date that he signed it. . . . there's somewhat of a technical component to it. He was not an employee of Isosceles on that date, even though Mr. Thompson expected it and had good reason to expect that it was going to happen. . . . put it another way--all of the ducks were not quite in a row for that

5

                                to be a true statement when it was made and so, therefore, it was false.

THE COURT:    Well, is it true that the duck known as Jing Li wasn't in a position to have a card that permitted him to be in the United States to be in line?

MR. ELLISON:    He had a different visa . . . Mr. Thompson had been led to believe that it would be an easy matter to transfer it over. He had not taken the steps to do that yet at the time this representation was made formally and later found that it was not possible to do that transfer. And we took out the other provisions because all three were not required for there to be a factual basis for this particular plea. And in fact, Jing Li did do work on the project; he was available, but not as an employee of Isosceles, which is what the false statement was.

(Docket 107 at p. 24:9-25; 25:1-26:19).

During the hearing on the motion to withdraw the guilty plea Mr. Thompson's attorney discussed the defendant's intent as of June 23, 2009, the date alleged in count II of the indictment.

MR. ELLISON:    [Mr. Thompson's] feelings were that he had not on the date that he signed that document on June 23, [2009,] believed that he was signing something false because he expected he would be able to take care of it by the time of the award which turned out to be a week later. . . .

                              Mr. Thompson is emphatic on the date he signed that document that it would not be correct that he believed he knew it was false, he believed that it was false, that Jing Li would not be the principal investigator, and that he would be employed.

. . .

THE COURT:    [I]t's required that he knew the claim was false, fictitious, or fraudulent, and that the false, fictitious,

          . . .

| | |
|---|---|
| | or fraudulent information was material to the National Science Foundation. This is not a count of an indictment charging negligence; this is not a count charging incompetent business practices. As I read Count 2 of this indictment, it is a knowing submission of a false statement on a material fact . . . . This is a crime that is a knowing false submission of fictitious or fraudulent information on a material matter. |
| MR. ELLISON: | It is Mr. Thompson's contention that on the date that he signed, June 23, the date that he signed the initial request for payment, that he did not know that the statement he was making was false or fraudulent, and did not believe that it was. |
| THE COURT: | That's an actual innocence claim with regard to the allegations in Count 2 which alleges that Mr. Thompson made and presented a claim, knowing those claims were false with regard to Mr. Li. |

(Docket 106 at pp. 3:20-14; 5:9-13; 6:9-24; 8:2-10).

Mr. Thompson's reluctance at the time of entering a plea of guilty evinced the unknowing nature of his plea and is corroborated by his presentence report objections and his claim of innocence on count II at the motion to withdraw guilty plea hearing. See Dockets 106 at pp. 15-18; 127 at pp. 3-17. The record adequately rebuts any presumption that Mr. Thompson's plea of guilty to count II was a knowing, voluntary plea. Based on the record, the court made the following finding.

> I find under the Federal Rules of Criminal Procedure [11(d)(2)] there is a fair and just cause. . . . Under these circumstances, I am going to grant the motion to withdraw the plea . . . .

Id. at pp. 17-25-18:1 and 14-15.

The court finds the totality of circumstances, including Mr. Thompson's repeated and consistently demonstrated lack of understanding of the intent element of count II, disclose he did not "possess an understanding of the law in relation to the facts." Bowersox, 145 F.3d at 1015 (internal citations and brackets omitted). See also Dockets 106 at pp. 15-18; 127 at pp. 3-17).

Since Mr. Thompson's original guilty plea was an "unknowing" plea, there was no waiving his rights under Rule 410. Because the plea agreement is invalidated completely by the unknowing nature of his plea, all statements made by Mr. Thompson in the course of plea negotiations and during the change of plea hearing are within the parameters of protection contemplated by Rule 410. This right of Mr. Thompson was not waived because of the unknowingly nature of his guilty plea. See Quiroga, 554 F.3d at 1154. As Rule 410 bars any reference to these statements, the court need not compare the potential prejudicial-versus-probative value of these statements as potential evidence under Fed. R. Evid. 403.

## ORDER

Based on the above analysis, it is hereby

ORDERED that defendant's motion *in limine* (Docket 126) is granted.

IT IS FURTHER ORDERED that government counsel and all witnesses at trial shall not mention, create an inference, or make any statement


The court finds the totality of circumstances, including Mr. Thompson's repeated and consistently demonstrated lack of understanding of the intent element of count II, disclose he did not "possess an understanding of the law in relation to the facts." Bowersox, 145 F.3d at 1015 (internal citations and brackets omitted). See also Dockets 106 at pp. 15-18; 127 at pp. 3-17).

Since Mr. Thompson's original guilty plea was an "unknowing" plea, there was no waiving his rights under Rule 410. Because the plea agreement is invalidated completely by the unknowing nature of his plea, all statements made by Mr. Thompson in the course of plea negotiations and during the change of plea hearing are within the parameters of protection contemplated by Rule 410. This right of Mr. Thompson was not waived because of the unknowingly nature of his guilty plea. See Quiroga, 554 F.3d at 1154. As Rule 410 bars any reference to these statements, the court need not compare the potential prejudicial-versus-probative value of these statements as potential evidence under Fed. R. Evid. 403.

## ORDER

Based on the above analysis, it is hereby

ORDERED that defendant's motion *in limine* (Docket 126) is granted.

IT IS FURTHER ORDERED that government counsel and all witnesses at trial shall not mention, create an inference, or make any statement

concerning the plea agreement, factual basis statement, plea colloquy, any statements made during the course of the preparation of the presentence report, any other evidence associated with the guilty plea or the defendant's withdrawal of the guilty plea.

    Dated August 26, 2014.

                            BY THE COURT:
                            /s/ *Jeffrey L. Viken*
                            JEFFREY L. VIKEN
                            CHIEF JUDGE