UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        vs.<br><br>SCOTT THOMPSON,<br><br>                         Defendant. | CR. 11-50054-JLV<br><br><br>ORDER |

## INTRODUCTION

On October 30, 2014, a jury found defendant Scott Thompson guilty of two

counts of making or presenting a false claim to a department or agency of the

United States, two counts of submitting a false document to a department or

agency of the United States, two counts of fraud by wire, and one count of receipt

of stolen government money.   (Docket 218).   Mr. Thompson through his

attorney timely moved the court for a judgment of acquittal pursuant to Fed. R.

Crim. P. 29 or, in the alternative, for a new trial pursuant to Fed. R. Crim. P. 33

on all counts on which he was convicted.   (Docket 255).   Mr. Thompson,

appearing *pro se*, filed additional briefing in support of his motions for judgment

of acquittal or, in the alternative, for a new trial.   (Dockets 262 & 278).   The

government resists the motions and filed separate briefs responding to Mr.

Thompson's attorney-prepared motion (Docket 275) and one of Mr. Thompson's

*pro se* filings.   (Docket 276).   For the reasons set forth below, the court denies

Mr. Thompson's motions in their entirety

**PROCEDURAL HISTORY**

On May 17, 2011, Mr. Thompson was charged in an eleven-count indictment alleging three counts of false claims, four counts of submitting false documents, three counts of wire fraud, and one count of receiving stolen government money.   (Docket 1).   A superseding indictment was filed on September 24, 2013, charging Mr. Thompson with three counts of false claims, four counts of submitting false documents to a department or agency of the United States, three counts of wire fraud, and one count of receiving stolen government property.   (Docket 92).

Prior to trial, on motion by the government, the court dismissed count 4 of the superseding indictment, charging Mr. Thompson with submitting a false document to a department or agency of the United States.[1]   (Docket 204).   The case proceeded to trial on October 20, 2014, and concluded on October 30, 2014. At the close of the government's case-in-chief, in a hearing outside the presence of the jury, Mr. Thompson orally moved for a judgment of acquittal under Fed. R. Crim. P. 29.   (TT Vol. VII 1042:8-1043:25).[2]   The court denied Mr. Thompson's oral motions as to all counts.   Id. at pp. 1057-75.   Mr. Thompson renewed his

---

[1]Because the court dismissed count 4 of the superseding indictment, each count thereafter was renumbered in the sequence of charged counts.   Further reference to the charged counts reflects the court's renumbering unless specifically noted otherwise.

[2]The court refers to the transcripts of Mr. Thompson's trial as "TT" followed by the volume number (there are eight volumes), the page number(s) and the line number(s) as identified by the transcript where the cited information may be found.   For example, the citation "TT Vol. VII 1042:8-1043:25" references information found in Volume VII, on page 1042, line 8 to page 1043, line 25.

Rule 29 motion at the close of all the evidence for the same reasons previously asserted.   Id. at 1087-88.   The court denied the motion on the same rationale provided in its earlier ruling.   Id. at 1088.

The jury found Mr. Thompson not guilty on counts 1, 4 and 7 and guilty on counts 2, 3, 5, 6, 8, 9 and 10.   (Docket 218).   Following trial, Mr. Thompson timely moved the court for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 or, in the alternative, for a new trial pursuant to Fed. R. Crim. P. 33.[3] (Dockets 255, 256 (brief in support), and 277 (reply brief)).   Mr. Thompson's post-trial motions for judgment of acquittal and for new trial renewed and incorporated his arguments made at trial regarding counts 2, 3, 5, 6, 8, 9 and 10 and set forth additional argument regarding counts 3 and 6.   (Dockets 255 & 256).   Mr. Thompson, although represented by counsel, submitted two *pro se* briefs in support of his attorney's motions.   (Dockets 262 & 278).   The court limits its recitation to those facts necessary to resolve the pending motions.

## EVIDENCE AT TRIAL

The case centers around a research project titled "Full Spectrum Conjugated Polymers for Highly Efficient Polymer Photovoltaics."   (Trial Exhibit "Ex." 4).   On February 25, 2009, Isosceles, LLC ("Isosceles"), through Scott Thompson, applied for a $150,000 Small Business Technology Transfer ("STTR")

---

[3]The court granted multiple extensions to Mr. Thompson, his counsel and the government in filing and responding to Mr. Thompson's motions for judgment of acquittal and new trial.   (Dockets 222, 232, 258 & 264).   The court received the final brief on May 20, 2015.   (Docket 277).   Mr. Thompson's sentencing is scheduled for Thursday, May 28, 2015.   (Docket 254).

Phase I grant with the National Science Foundation ("NSF").   (Ex. 1).   For Isosceles, Mr. Thompson was the authorized organizational representative, Chief Technology Officer, Chief Financial Officer and was included among its senior personnel.   See Trial Exhibits ("Exs.") 1 at pp. 2, 17 & 4 at p. 1.   Isosceles partnered with South Dakota State University ("SDSU"), the subawardee, as part of the "Full Spectrum" project.   (Ex. 1C; see also TT Vol. II at pp. 134-35, 165 (describing subawardees)).   This meant that SDSU was allocated a portion of the overall budget and was expected to perform portions of the work.   See Exs. 1; 2A at p. 4; 520.

On June 23, 2009, the NSF awarded Isosceles a $150,000 grant—$100,000 payable within two weeks after the NSF received an initial payment request from Isosceles and $50,000 after Isosceles submitted an acceptable final report.   See Exs. 2; 2A at p. 5; see also TT Vol. II at pp. 188-191. The award was effective from July 1, 2009 to June 30, 2010.   (Ex. 2).   An NSF grant recipient must identify and employ a principal investigator for the entire duration of the grant.   (TT Vol. II at pp. 136-41).

An NSF program solicitation states the "primary employment of the Principal Investigator (PI) must be with the small business concern at the time of the award.   The PI must spend a minimum of two calendar months on an STTR Phase I project."   (Ex. 1B at p. 4).   Dr. Prakash Balan, a program director with the NSF, testified that "primary employment" is defined as "51 percent employed by the small business and it considers a full time work week to be normally 40

4

hours and considers employment elsewhere of greater than 19.6 hours to be in conflict with the requirement."   (TT Vol. II at pp. 202:22-203:1; see also TT Vol. I at p. 64 (describing Dr. Balan's position with the NSF); Ex. 817 (The fiscal year 2013 program solicitation)).

Dr. Josephine Yuen was a program director with the NSF's Small Business Innovation Research ("SBIR") and STTR programs.   (TT Vol. II at p. 253).   As part of her position, Dr. Yuen would "support the grantee and both in terms of what help they would need, but also to make sure that the grantees comply with the rules and regulations the grants are subject to."   Id. at 254:4-7.   Dr. Yuen took over as the program director for Isosceles, LLC from Dr. Cynthia Znati.   Id. at 255-56.   Dr. Yuen testified she informed Mr. Thompson that Isosceles would only receive NSF funding for amounts actually spent up to the limit of the NSF grant.   (TT Vol. II at p. 262-63; Ex. 520).   Dr. Yuen testified that within the limits of the NSF grant award and with NSF approval a grant recipient could move funds between under- and over-budgeted areas.   Id. at 263-64.

Mr. Thompson informed Dr. Yuen that Isosceles never hired Dr. Jing Li. (TT Vol. II at pp.271-72; see also Ex. 520D).   Dr. Li was performing research work with Dr. Qiquan Qiao as a postdoc at SDSU.   (TT Vol. IV at pp. 538-41). Dr. Li was named as the principal investigator on the "Full Spectrum" project. (Ex. 1 at p. 1).   Dr. Li testified that he was never hired or paid by Scott Thompson or Isosceles.   (TT Vol. V at pp. 555-56).   Dr. Qiao, an associate professor with SDSU and co-principal investigator on the "Full Spectrum"

5

project, testified Dr. Li performed work for SDSU but did not complete 160 hours of work for Isosceles.   (TT Vol. IV at p. 519; <u>see also</u> TT Vol. III at p. 303; Ex. 1 at p. 1 (documenting Dr. Qiao's relationship with Isosceles in the "Full Spectrum" project)).

Dr. Yuen, after having been told by Mr. Thompson that Isosceles never hired Dr. Li and that Dr. Li did not have the email address indicated on the initial proposal, informed Mr. Thompson that Isosceles was no longer in compliance with the terms and conditions of the NSF grant.   (TT Vol. II at pp. 271-73).   Dr. Yuen testified she informed Mr. Thompson he needed to return unused NSF grant money to the government.   <u>Id.</u> at 273, 283-84; <u>see also</u> Ex. 520A.   Mr. Thompson acknowledged that unused portions of the NSF grant must be returned.   (Ex. 520A at p. 3).

Dr. Yuen informed Mr. Thompson he could voluntarily withdraw from the NSF grant or she would begin the NSF process for terminating non-compliant grants.   <u>Id.</u> at 273; <u>see also</u> Ex. 520D.   Mr. Thompson chose to voluntarily withdraw from the NSF grant.   (Ex. 520D).   Dr. Yuen testified the effective date of Isosceles' withdrawal was December 20, 2009.   (TT Vol. II at p. 279:18).   On January 14, 2010, as a requirement of Isosceles' withdrawal from the NSF grant, Mr. Thompson submitted a final report documenting, among other things, the scientific findings of the "Full Spectrum" project, the actual expenditures of the project, the project participants and an attestation that specific project participants worked at least 160 hours.   <u>Id.</u> at 279-84; <u>see also</u> Ex. 4.

Dr. Prakash Balan testified the purpose of the final report is for grant recipients "to report back to the [NSF] on what they did with the grant money, [and] what they learned, what science was executed as per the tasks laid out in the grant proposal."   (TT Vol. II at pp. 155:23-156:1).   Isosceles' final report, on its face, indicates Dr. Li as the principal investigator for Isosceles submitted the final report and that Dr. Li worked at least 160 hours on the project.[4]   (Ex. 4 at p. 1; <u>see</u> <u>also</u> TT Vol. II at pp 280-81).   The final report was submitted on behalf of Isosceles.   <u>Id.</u>   Dr. Yuen testified the cover page of the final report contained several prepopulated fields.   (TT Vol. II at pp. 280-81; <u>see</u> <u>also</u> <u>id.</u> at 165-66). Specifically, Dr. Yuen testified the field naming Dr. Li as the principal investigator was a prepopulated field.   (TT Vol. II at pp. 280-81; <u>see</u> <u>also</u> <u>id.</u> at 159-60) (Dr. Balan stated the field naming Isosceles as the grantee organization was also automatically filled out.).   Dr. Balan testified the prepopulated field concerning the principal investigator could be modified through a formal request to the NSF.   <u>Id.</u> at 159-60.

---

[4]The jury received extensive evidence on whether Mr. Thompson's attestation that Dr. Li worked at least 160 hours referenced Dr. Li's work as the principal investigator for Isosceles (the government asserts no work was performed in this regard) or whether Mr. Thompson's attestation referenced work Dr. Li performed on behalf of SDSU.   <u>Compare</u> TT Vol. II at p. 161 (Dr. Balan testified the 160 hour minimum work requirement is included in the final report so grant recipients can demonstrate compliance with the NSF's two-month primary employment requirement), <u>and</u> Exs. 1B at p. 4 & 817 (outlining the NSF's primary employment criteria, including the two-month work requirement, that a principal investigator must satisfy) <u>with</u> TT Vol. VI at pp. 922-23 (Special Agent Pritchard on cross-examination testified the final report does not specify whether Dr. Li completed his 160 hours of work as Isosceles' principal investigator or at SDSU.).

The summary of project expenses contained in Isosceles' final report indicated total project expenditures of $170,223.51 with an NSF budget of $100,000 and no unused funds available to be returned by the project.[5]   (Ex. 4 at p. 9).   Dr. Yuen testified that after reviewing the reports submitted by SDSU and Isosceles she found the reports so similar that she "could not figure out what additional work [Isosceles] could have done."   (TT. Vol. II at p 288:10-12).

## DISCUSSION

1.   **Judgment of Acquittal**

a.   **Standard of Review**

Fed. R. Crim. P. 29(c) gives the district court authority to set aside a guilty verdict and enter an acquittal upon a defendant's post-trial motion.   A district court "has very limited latitude in ruling upon a motion for judgment of acquittal."   United States v. Espinosa, 585 F.3d 418, 423 (8th Cir. 2009) (quoting United States v. Baker, 367 F.3d 790, 797 (8th Cir. 2004)) (internal quotation marks omitted).   "A motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt."   United States v. Boesen, 491 F.3d 852, 855 (8th Cir. 2007) (citations and internal

---

[5]NSF Office of Inspector General Agent Michael Pritchard testified he was unable to find documentation supporting Isosceles' direct labor costs of $34,471.88 because Mr. Thompson was the only person who worked at Isosceles and was only entitled to $14,788.   (TT Vol. VI at pp. 905-07; see also Ex. 4 at p. 9).

8

quotation marks omitted).   This standard is strict, and the court should not overturn a jury verdict lightly.   Id.

The court must enter an acquittal if the evidence presented at trial is insufficient to sustain a conviction.   Id.   Evidence may be direct or circumstantial.   Baker, 367 F.3d at 798.   "Evidence supporting a conviction is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   Boesen, 491 F.3d at 856 (internal quotation marks and citation omitted).   The court must not weigh the evidence or assess the credibility of witnesses.   Baker, 367 F.3d at 797; see also Boesen, 491 F.3d at 857 ("In ruling on a motion for a judgment of acquittal, the role of the court is not to weigh [the] evidence . . . but rather to determine whether the Government has presented evidence on each element to support a jury verdict.") (internal quotation marks and citations omitted).   The court may not upset the jury's assessment of the credibility of the witnesses without extraordinary circumstances.   See United States v. Hakim, 491 F.3d 843, 845-46 (8th Cir. 2007); United States v. Hayes, 391 F.3d 958, 961 (8th Cir. 2004).

The court "views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly, and accepts all reasonable inferences supporting the jury's verdict."   Boesen, 491 F.3d at 856. In short, the court must uphold the jury verdict if "drawing all reasonable inferences in favor of the verdict, there is an interpretation of the evidence that

9

would allow a reasonable minded jury to find the defendant[] guilty beyond a reasonable doubt." Id. at 856 (citations and internal quotation marks omitted).

### b. Defendant's Reincorporated Arguments and *Pro Se* Filings in Support of the Motion for Acquittal

To the extent Mr. Thompson renews and incorporates his arguments from trial in favor of a judgment of acquittal and for a new trial on counts 2, 3, 5, 6, 8, 9 and 10, the court denies Mr. Thompson's motions based on the same rationale provided at trial. See TT Vol. VII at pp. 1062-63 (denying the motion as to counts 3 and 6), 1066-67 (denying the motion as to counts 2 and 5), 1067-68 (denying the motion as to counts 7, 8 and 9—the jury found Mr. Thompson not guilty on count 7), and 1073-75 (denying the motion as to count 10).

The court allowed Mr. Thompson to file additional *pro se* briefing after receiving argument in two post-trial, *ex parte* hearings and a motion for additional briefing.   (Dockets 257 & 258).   The court carefully reviewed and considered the issues raised in Mr. Thompson's additional *pro se* briefs in support of his motions for judgment of acquittal and new trial.   (Docket 262 & 278).   The court also carefully reviewed and considered the government's response to Mr. Thompson's *pro se* brief.   (Docket 276).   The issues raised in Mr. Thompson's briefs were either raised by counsel at trial, raised by counsel in the current motions, considered by the court in Mr. Thompson's earlier motions for judgment of acquittal (TT Vol. VII at pp.1062-75; 1087-88), considered by the

jury under the court's instructions, or were otherwise unreliable[6] or without merit.

The court's consideration of Mr. Thompson's *pro se* filings, while being represented by counsel, exceeds that which is required.   See United States v. White, No. 14-3137, 2015 WL 23430472, at *5 n.2 (8th Cir. 2015) (unpublished) ("[T]he defendant also filed a pro se motion to supplement the brief filed by counsel.   Consistent with our normal practice, we deny her motion.") (citations omitted); United States v. McIntosh, 492 F.3d 956, 961 n.2 (8th Cir. 2007) ("We generally do not accept pro se motions or briefs when an appellant is represented by counsel . . . .") (citing United States v. Payton, 918 F.2d 54, 56 n.2 (8th Cir. 1990); Abdullah v. United States, 240 F.3d 683, 686 (8th Cir. 2001) ("A district court has no obligation to entertain pro se motions filed by a represented party.") (citations omitted); United States v. Agofsky, 20 F.3d 866, 872 (8th Cir. 1994) ("There is no constitutional or statutory right to simultaneously proceed pro se and with benefit of counsel.") (citing Brasier v. Jeary, 256 F.2d 474, 478 (8th Cir. 1958), *cert. denied,* 358 U.S. 867 (1958) (further citations omitted)).

The court finds the jury's verdict of guilt with respect to counts 2, 3, 5, 6, 8, 9 and 10 must be upheld as "there is an interpretation of the evidence that would

---

[6]See, e.g., Docket 278 at p. 7 (Mr. Thompson's claim that "[t]here was no evidence that the defendant knew or believed that the final report contained a claim that Jing Li was the principal investigator for Isosceles or that the final report included that statement[,] [e]vidence demonstrated that the final report made no such claim," is contradicted by the face of the final report and by the testimony of Dr. Yuen and Special Agent Pritchard.   Resolving that factual dispute was a jury function.

allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." United States v. DeMarce, 564 F.3d 989, 998 (8th Cir. 2009) (citing United States v. Scott, 64 F.3d 377, 380 (8th Cir. 1995)).   Mr. Thompson's motion for an acquittal based on his arguments asserted at trial is denied.   Mr. Thompson's *pro se* advocacy in support of his attorney's motions for judgment of acquittal and new trial is unpersuasive.

The court next considers Mr. Thompson's written argument in support of a judgment of acquittal as to counts 3 and 6.

### c.    Counts 3 and 6

Mr. Thompson argues there is insufficient evidence of the materiality of the false claims and statements referenced in counts 3 and 6 to sustain a conviction. Counts 3 and 6 concern the claims and statements Mr. Thompson made in Isosceles' final report to the NSF.   Count 3 of the superseding indictment alleged:

> On or about January 14, 2010, at Rapid City, in the District of South Dakota, and elsewhere, the defendant, Scott Thompson, made and presented a claim, in a matter within the jurisdiction of a department or agency of the United States, namely, upon on the National Science Foundation, that is, in the final report for Period June 2009, to June 2010, the defendant, Scott Thompson, claimed Jing Li was employed as the Principal Investigator for Isosceles LLC for the project titled "Full Spectrum Conjugated Polymers for Highly Efficient Polymer Photovoltaics," and that Jing Li had worked more than 160 hours on the project, knowing the claims were false in that Jing Li was not an employee of Isosceles LLC and had not worked 160 hours on the project, all in violation of 18 U.S.C. § 287.

(Docket 92 at pp. 2-3).

The offense of making a false claim as charged in count 3 has five essential elements:

1. That on or about the date alleged in each count, Scott Thompson made or presented to the National Science Foundation a claim upon or against the United States;

2. That at the time the claim was presented, the National Science Foundation was a department or agency of the United States;

3. That the claim was false, fictitious or fraudulent for the reasons set out above in Counts 1, 2 and 3;

4. That Scott Thompson knew the claim was false, fictitious or fraudulent; and

5. The false, fictitious or fraudulent claim was material to the National Science Foundation.

. . .

> A claim is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the agency. However, whether a claim is "material" does not depend on whether the agency was actually deceived.

(Docket 208 at pp. 7-8). The court also defined "false," "fictitious" and "fraudulent" and informed the jury they need only find a claim is false in at least one of the ways set out in a particular count of the indictment. Id.

Count 6, formerly count 7 of the superseding indictment, alleged:

On or about January 14, 2010, at Rapid City, in the District of South Dakota, and elsewhere, the defendant, Scott Thompson, did willfully and knowingly make and cause to be made, and used and caused to be used, in a matter within the jurisdiction of a department or agency of the United States, namely the National Science Foundation, a false writing or document, knowing the same to contain materially false, fictitious, and fraudulent statements, in that the defendant, Scott Thompson, submitted a National Science Foundation Small Business Innovative Research Program Award

13

Final Report for Period June, 2009 to June 2010, in which the defendant, Scott Thompson, claimed Jing Li was employed as the Principal Investigator for Isosceles LLC for the project titled "Full Spectrum Conjugated Polymers for Highly Efficient Polymer Photovoltaics," and that Jing Li had worked more than 160 hours on the project, well knowing and believing that Jing Li was not an employee of Isosceles LLC and had not worked 160 hours on the project, all in violation of 18 U.S.C. § 1001.

(Docket 92 at p. 5).

The offense of submitting a false document to a department or agency of the United States as charged in count 6 has five essential elements:

1. That on or about the date alleged in each count, Scott Thompson voluntarily and intentionally made or used a writing or document;

2. That the writing or document contained a false, fictitious or fraudulent statement;

3. That at the time Mr. Thompson made the writing or document, he knew it contained a false, fictitious or fraudulent statement;

4. That the false, fictitious or fraudulent statement was material to the National Science Foundation; and

5. That the Initial Proposal, Initial Payment Request and Final Report were matters within the jurisdiction of the National Science Foundation.

. . .

A writing or document is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the agency. However, whether a writing or document is "material" does not depend on whether the agency was actually deceived.

14

(Docket 208 at pp. 10-11).   The court also defined "false," "fictitious," "fraudulent" and "knowingly."   Id.

Mr. Thompson's arguments in support of his assertion that there is insufficient evidence of the materiality of the false claims and statements referenced in counts 3 and 6 to sustain a conviction are twofold.   Mr. Thompson asserts "[t]he NSF did not rely on the claims and statements"; and "[t]here was no evidence at trial of any decision to be made by the NSF that had the capability to be impacted by the post-termination claims and statements [of Mr. Thompson]." (Docket 256 at p. 11).   The court interprets Mr. Thompson's motion as challenging the materiality of the claims (count 3, element 5) or statements (count 6, element 4) Mr. Thompson made in the final report he submitted on behalf of Isosceles to the NSF.   Mr. Thompson's materiality arguments as to both counts are intertwined.   The following analysis addresses both counts.[7]

"The question of whether [a defendant's] statements were material, that is, whether the statements were capable of influencing [a governmental agency] . . . [is] for the jury to decide."   United States v. Raether, 82 F.3d 192, 193 (8th Cir.

_____

[7]The United States Court of Appeals for the Eighth Circuit treats materiality as an essential element of both making a false claim under 18 U.S.C. § 287 and submitting a false statement under 18 U.S.C. 1001.   United States v. Adler, 623 F.2d 1287, 1291 & n.5 (8th Cir. 1980).   The Eighth Circuit applies a virtually identical materiality test for both offenses.   Compare United States v. Henderson, 416 F.3d 686, 692 (8th Cir. 2005) (defining materiality for purposes of a false statement), with United States v. Jirak, 728 F.3d 806, 812 (8th Cir. 2013) cert. denied, 134 S. Ct. 2134 (2014) (defining materiality for purposes of a false claim).

1996) (The defendant was granted a new trial after the jury was not instructed to consider the materiality of the defendant's statements.); see also United States v. Gaudin, 515 U.S. 506, 522-23 (1995).   "In federal statutes criminalizing false statements to public officials, materiality means any 'natural tendency to influence, or was capable of influencing, the decision of the decision making body to which it was addressed.' "  United States v. Henderson, 416 F.3d 686, 692 (8th Cir. 2005) (quoting Kungys v. United States, 485 U.S. 759, 769-70 (1988).

   "To establish materiality of a false statement it is not necessary to show that a government agency actually relied on the statement, that the government suffered pecuniary loss as a result of the statement or that the false statement was sufficient to induce a payment or benefit."   United States v. Richmond, 700 F.2d 1183, 1188 (8th Cir. 1983), *abrogated on other grounds*, Raether, 82 F.3d at 192.   "A statement may be material where . . . no payments are at issue but where the false statement is made in the hope of influencing a pending investigation."   United States v. Cowden, 677 F.2d 417, 419 (8th Cir. 1982) (citing United States v. May, 625 F.2d 186, 194 (8th Cir. 1980)); see also United States v. Liner, 435 F.3d 920, 925 (8th Cir. 2006) ("To sustain a conviction under this section, the government must prove that the defendant's false statements were material to the governmental inquiry.") (citing United States v. Robertson, 324 F.3d 1028, 1030 (8th Cir. 2003)); United States v. Johnson, 284 F. Supp. 273, 278 (W.D. Mo. 1968) ("The very purpose of sections 287 and 1001 is to

16

protect the government against those who would cheat or mislead it in the administration of its programs."), *aff'd,* 410 F.2d 38 (8th Cir. 1969), *cert. denied,* 396 U.S. 822 (1969).

As a preliminary matter, Mr. Thompson's assertion that the claims and statements alleged in count 3 and 6 were not material because "[t]he NSF did not rely on the claims and statements" must fail.   (Docket 256 at p. 11).   That is not the test for materiality.   See Richmond, 700 F.2d at 1188 ("To establish materiality of a false statement it is not necessary to show that a government agency actually relied on the statement . . . .").

With regard to Mr. Thompson's second contention, Dr. Yuen's decision not to seek the disbursement of the remaining $50,000 normally available to a SBIR/STTR grant recipient following the receipt of Isosceles' final report does not end the materiality inquiry.   The NSF has a significant interest in recovering previously disbursed grant funds, whether used or unused, from noncompliant grant recipients.   Even with a compliant grant, the NSF must ensure the proceeds were spent in accord with the terms and conditions of the grant and seek the return of any unused portions of the grant.   To view an NSF final report only as a vehicle by which a grantee may obtain future funding misses the mark.

Mr. Thompson's "voluntary withdrawal" from the grant program does not obviate the NSF's need to review how Isosceles spent its funds.   Dr. Yuen informed Mr. Thompson that the NSF could not allow this "non-compliant and potentially illegal situation to continue" and Mr. Thompson was told he could

17

either voluntary withdraw from the NSF grant program and return the unused portions of the grant proceeds or the NSF would begin its processes for terminating noncompliant grants.   (Ex. 520D).   He was given three days to decide.   Id.   He chose to voluntarily withdraw.   Id.   These circumstances demonstrate the need for the NSF to review and investigate Isosceles' final report and ascertain how its funds were spent, especially where Isosceles was under no interim reporting requirements.   See Ex. 520A at p. 5.

Mr. Thompson, on behalf of Isosceles, was required to utilize the grant proceeds in accordance with the NSF's terms and conditions.   Mr. Thompson, on behalf of Isosceles, was required to return any unused portions of the grant proceeds.   And, Mr. Thompson, on behalf of Isosceles, was required to submit a final report to the NSF as part of the grant termination process.   A reasonable juror could determine Mr. Thompson's claims and statements that Dr. Li was the principal investigator for Isosceles or that Dr. Li worked over 160 hours on the project[8]  had a "natural tendency to influence, or was capable of influencing" the NSF's review of the "Full Spectrum" project and the propriety with which Mr. Thompson spent NSF funds.   See Henderson, 416 F.3d at 692.   A reasonable juror also could determine that Mr. Thompson's claims and statements regarding Dr. Li were capable of influencing the NSF's decision to seek

---

[8]The jury heard a considerable amount of testimony that, along with Dr. Li never having been employed by Isosceles, Dr. Li's work with SDSU, as the subawardee, does not count toward the 160 hour minimum referenced in the final report.   See, e.g., TT Vol. II at pp. 230-31 (Dr. Balan's testimony) and 272:5-11 (Dr. Yuen's testimony).

recoupment of the unused or ill-used grant proceeds from Isosceles.   Cowden, 677 F.2d at 419 ("A statement may be material where . . . no payments are at issue but where the false statement is made in the hope of influencing a pending investigation.").   The claims and statements alleged in counts 3 and 6 were material to the NSF.

Mr. Thompson's cited authority is not persuasive.   In Cowden, the defendant after arriving in the United States from England checked "no" on a question on a customs form asking if the traveler was carrying over $5,000 in monetary instruments.   Cowden, 677 F.2d at 417-18.   The customs agent performed his typical examination and asked the defendant what the value was of all items acquired outside of the United States.   Id. at 418.   The agent after finding found a parcel hidden beneath a flap in the suitcase testified he "did everything possible to avoid arousing [the defendant's] suspicion" and then asked the defendant again if there was anything he wanted to add to his declaration.   Id.   The defendant initially responded in the negative but when asked a second time responded that he would like to amend his declaration.   Id. The parcel contained $578 of foreign currency and over $15,000 in U.S. currency.   Id.

The Eighth Circuit, on the facts of that case, reversed the defendant's judgment of conviction because the defendant "almost immediately" corrected his false customs declaration with a "true oral statement" and because the

19

custom agent's failure to conduct the examination in accord with agency regulations contributed to the making of the false statement.   Id. at 420.

These circumstances are not present in Mr. Thompson's case.   No evidence was introduced indicating Mr. Thompson's false claims or statements were caused by the NSF or its agents failing to adhere to applicable federal regulations.   Mr. Thompson, despite informing Dr. Yuen that Isosceles was never able to hire Dr. Li and that he was voluntarily withdrawing from the NSF grant, did not seek guidance on how to alter the prepopulated fields in the final report or seek to amend the report after its submission.

Mr. Thompson briefly cites the case of United States v. Beer, 518 F.2d 168, 171-72 (5th Cir. 1975).   (Docket 256 at p. 9).   The Beer court was faced with assessing the materiality of a false statement made to a bank examiner with the Federal Deposit Insurance Corporation ("FDIC").   Id. at 171-72.   The court reasoned that the "potential for subversion of [the FDIC's] functioning" was absent because "[o]nly a few weeks after [the defendant] made his statement the loan in question was repaid and the bank suffered no loss."   Id. at 172.

The court notes Beer constitutes only persuasive authority.   The jury heard testimony indicating that the recipient of an NSF grant must employ a principal investigator for the entire duration of the grant.   (TT Vol. II at pp. 136-41).   The jury also heard testimony indicating that Isosceles was never able to hire Dr. Li, the named principal investigator.   Id. at 271-72.   The final report submitted by Mr. Thompson, on behalf of Isosceles, indicated that all of the

NSF's grant proceeds had been spent despite Isosceles never having hired Dr. Li. (Ex. 4 at p. 9).   The court finds the "potential for subversion" of the NSF's functioning is present in Mr. Thompson's case as the NSF continues to seek recoupment of its grant proceeds from Mr. Thompson.

The court notes the jury acquitted Mr. Thompson on counts 1, 4 and 7. (Docket 218).   Count 1 contained the same materiality element as count 3 and also charged Mr. Thompson with making a false claim.   (Docket 208 at pp 6-8). Count 4 contained the same materiality element as count 6 and also charged Mr. Thompson with submitting a false document.   Id. at 9-11.   The court finds the jury carefully performed its duty in assessing the materiality of Mr. Thompson's false claims and statements, as evidenced by their refusal to render a blanket guilty verdict.   See United States v. Fazio, 487 F.3d 646, 656 (8th Cir. 2007); see also United States v. Caldwell, 83 F.3d 954, 958 (8th Cir. 1996) ("[T]he acquittal of [the defendant] on five counts demonstrates that the jury carefully considered the evidence before reaching a verdict.").

Viewing the record in the light most favorable to the verdict and drawing all reasonable inferences in favor of the verdict, the court finds there was an interpretation of the evidence that would allow a reasonable minded jury to find Mr. Thompson made a false, fictitious, or fraudulent claim or statement to the NSF and that those claims or statements were material to the NSF.   The court denies Mr. Thompson's motion for a judgment of acquittal on counts 3 and 6.

21

## 2.    New Trial

### a. Standard of Review

Fed. R. Crim. P. 33(a) gives the district court authority to vacate a judgment and grant a new trial in the interest of justice.   The decision to grant or deny a Rule 33 motion "is within the sound discretion of the [district] court." United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002).   The court's discretion is both broad and limited.   Id.   It is broad to the extent the court "can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict."   Id. (internal quotation marks and citations omitted).   "[T]he court need not view the evidence most favorably to the verdict."   United States v. Worman, 622 F.3d 969, 977 (8th Cir. 2010); United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000) (In determining whether to grant a Rule 33 motion, "the court need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses.").

The court's discretion is limited to the extent the court must allow the jury's verdict to stand unless it determines a miscarriage of justice will occur. Id.; see also United States v. McCraney, 612 F.3d 1057, 1064 (8th Cir. 2010) ("Where a defendant moves for a new trial on the grounds that the verdict is contrary to the weight of the evidence, the district court should grant the motion if the evidence weighs heavily enough against the verdict that a

22

miscarriage of justice may have occurred.") (internal quotation marks and citation omitted); Worman, 622 F.3d at 978 ("A district court will upset a jury's finding only if it ultimately determines that a miscarriage of justice will occur."); United States v. Camacho, 555 F.3d 695, 705 (8th Cir. 2009) ("[A] new trial motion based on insufficiency of the evidence is to be granted only if the weight of the evidence is heavy enough in favor of acquittal that a guilty verdict may have been a miscarriage of justice."); United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980) ("If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.").

Because a motion for new trial based on the weight of the evidence is "generally disfavored," the district court should use its authority to grant a Rule 33 motion "sparingly and with caution."   Campos, 306 F.3d at 579 (internal quotation marks and citations omitted); see also United States v. Bertling, 510 F.3d 804, 808 (8th Cir. 2007) ("A district court should not grant a motion for a new trial simply because it would have reached a different verdict.") (citations omitted).

    **b.**    **Analysis**

Based in part on the same reasoning already provided, the court finds Mr. Thompson is not entitled to a new trial on counts 2, 3, 5, 6, 8, 9 and 10 of the

superseding indictment under Fed. R. Crim. P. 33.   The court does not find "the weight of the evidence is heavy enough in favor of acquittal that a guilty verdict may have been a miscarriage of justice."   See Camacho, 555 F.3d at 705.   In making its determination, the court weighed the evidence and assessed the credibility of the witnesses.   See Lacey, 219 F.3d at 783-84.   The court considered the oral arguments of Mr. Thompson's attorney at trial, Mr. Thompson's written briefs regarding counts 3 and 6 (Dockets 256 & 277), and Mr. Thompson's *pro se* briefs.   (Dockets 262 & 278).   The court reiterates its observation made while deciding count 10 of Mr. Thompson's Rule 29 motion for a judgment of acquittal at trial:

> [M]ake no mistake about it, this is a case where there are serious questions for the jury on virtually every element of every charge, but they are jury questions going to the weight of the evidence and the credibility of the witnesses on those matters, all of it or much of it bearing on Mr. Thompson's state of mind at various points throughout the period of time subject to the counts of the indictment.

 (TT Vol. VII at p. 1074:10-17).

The jury was faced with the difficult tasks of weighing the evidence and assessing witness credibility.   The jury was in the best position to perform this function.   Although portions of the jury's verdict were contrary to Mr. Thompson's interests, that does not render the verdict a miscarriage of justice. The court denies Mr. Thompson's motion for a new trial on counts 2, 3, 5, 6, 8, 9 and 10.

**ORDER**

Based on the above analysis, it is

ORDERED that Mr. Thompson's motion for judgment of acquittal (Docket 255) is denied.

IT IS FURTHER ORDERED that Mr. Thompson's motion for a new trial (Docket 255) is denied.

Dated May 28, 2015.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE

25